# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

Kelly Woodburn and Thomas Woodburn,

    Plaintiffs

v.

City of Henderson, Does I–V, Roe Corporations I-V,

    Defendants

Case No.: 2:19-cv-01488-JAD-VCF

**Order Denying Defendant's Motion to Dismiss and Motion to Strike and Lifting Stay of Discovery**

[ECF Nos. 8, 9]

    Corrections officers Kelly and Thomas Woodburn bring a Fair Labor Standards Act (FLSA)[1] claim on behalf of themselves and all similarly situated City of Henderson employees who were required to work unpaid overtime.[2] The City moves to dismiss their claim, arguing that the Woodburns have failed to plausibly allege an FLSA violation under the standard articulated in *Landers v. Quality Communications, Inc*.[3] It also moves to strike any allegations in the complaint that refer to currently employed corrections officers because those officers are allegedly subject to an arbitration agreement that precludes their membership in the proposed class.[4] I deny both motions because the Woodburns sufficiently allege that, during their respective work periods, they were required to work unpaid, overtime hours; and the City's motion to strike the class allegations is premature.

---

[1] 29 U.S.C. §§ 201–219.

[2] ECF No. 1-2 (amended complaint).

[3] ECF No. 8 at 5 (citing *Landers v. Quality Commc'n, Inc.*, 771 F.3d 638 (9th Cir. 2014)) (motion to dismiss).

[4] ECF No. 9 (motion to strike).

**Background**[5]

The Woodburns worked as corrections officers for the City from approximately November 2007 through July 2018, before each retired.[6] Both officers provide considerable detail about their time spent working for the City, including an explanation of each type of shift they worked for each year of their employment, the amount of days they worked each week and how many hours they worked each day, along with their pay rates.[7] For example, Ms. Woodburn notes that she worked "'Graves B' shift" from "August 2013 through August 2014," which required her to work from 7:00 p.m. to 7:00 a.m. three days one week and four days the next, totaling 86 hours over a "two-week pay period" at $44.11 per hour.[8] And Mr. Woodburn states that, from "August 2016 through August 2017," he worked "'Days B' shift," which required him to be at work from 7:00 a.m. to 7:00 p.m. three days one week and four days the next, totaling 86 hours over a "two-week pay period" at $38.11 per hour.[9]

For "each and every shift" they worked, the Woodburns were also required to come to work approximately thirty to forty minutes before the start of their shifts and leave approximately twenty to forty-five minutes after the end of their shifts.[10] During those times, they needed to change into and out of their uniforms, check their schedules, de-brief other officers, and either collect or lock up their supplies (including vehicles and firearms).[11] In Ms.

---

[5] This is merely a summary of facts alleged in the complaint and should not be construed as findings of fact.
[6] ECF No. 1-2 at ¶¶ 10, 11.
[7] *Id.* at ¶¶ 25, 27.
[8] *Id.* at ¶ 25.
[9] *Id.* at ¶ 27.
[10] *Id.* at ¶¶ 13, 18, 26, 28.
[11] *Id.* at ¶¶ 15, 20.

Woodburn's case, these required tasks added roughly sixty minutes of unpaid overtime to each shift she worked, for which she was deprived approximately $12,042.94 each year.[12] And Mr. Woodburn allegedly worked forty-five minutes of overtime every shift, depriving him of $7,804.16 in overtime pay per year.[13]

The Woodburns bring this FLSA class action, seeking to certify a class of all current and former City employees who were denied overtime pay while working as corrections officers during the three years before they filed their complaint on July 3, 2019.[14] The City moves to dismiss, arguing that the allegations are insufficient to plausibly allege an FLSA violation.[15] It also moves to strike any allegations purporting to include current employees in the proposed class because those employees are subject to a mandatory arbitration agreement that precludes their participation in this action.[16]

## Discussion

### I.  The City's motion to dismiss

#### A.  Standard of review

District courts employ a two-step approach when evaluating a complaint's sufficiency on a Rule 12(b)(6) motion to dismiss. The court must first accept as true all well-pled factual allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption of truth.[17] Mere recitals of a claim's elements, supported by only conclusory statements, are

---

[12] *Id.* at ¶ 26.
[13] *Id.* at ¶ 28.
[14] *Id.* at ¶¶ 33, 35.
[15] ECF No. 8.
[16] ECF No. 9.
[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

insufficient.[18] The court must then consider whether the well-pled factual allegations state a plausible claim for relief.[19] A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[20] A complaint that does not permit the court to infer more than the mere possibility of misconduct has "alleged—but not shown—that the pleader is entitled to relief," and it must be dismissed.[21]

**B.      The Woodburns plausibly allege an FLSA violation.**

"The FLSA's minimum wage and overtime provisions are central among the protections the Act affords to workers."[22] For public law-enforcement employees, the FLSA requires "overtime pay of one and a half times an employee's hourly wage for every hour worked" over the applicable, statutory threshold.[23] Both parties agree that the Ninth Circuit's decision in *Landers v. Quality Communications, Inc.* articulates the pleading standard for FLSA claims, requiring that plaintiffs allege that they "worked more than forty hours in a given workweek."[24] Consistent with Federal Rule 8, *Landers* does not require detailed factual pleading and is

---

[18] *Id.*

[19] *Id.* at 679.

[20] *Id.*

[21] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[22] *Adair v. City of Kirkland*, 185 F.3d 1055, 1059 (9th Cir. 1999).

[23] *Probert v. Fam. Centered Servs. of Alaska, Inc.*, 651 F.3d 1007, 1009–10 (9th Cir. 2011); *see also* 29 U.S.C. §§ 207(a)(1), (k) (describing overtime pay and hours requirements for those "employ[ed] by [a] public agency engaged in fire protection or law enforcement activities").

[24] *Landers*, 771 F.3d at 644–45.

"context-specific;" "mathematical precision" is not demanded.[25] *Landers* simply requires an FLSA plaintiff to allege that actual overtime went unpaid.[26]

The Woodburns meet this standard. *Landers* prescribes multiple ways that plaintiffs can establish a plausible FLSA claim, including estimating the length of an average workweek and the pay received in an average workweek, estimating the amount of overtime wages allegedly owed, or pleading "any other facts that will permit the court to find plausibility."[27] Both Kelly and Thomas Woodburn provide comprehensive details about the specific weeks they worked and the hours they worked each shift and each pay period, as well as a specific accounting of how many overtime hours they were required to work per shift and their job duties during those overtime hours.[28] They also calculate how much overtime pay the City owes them.[29] The Ninth Circuit, as well as courts in this district, repeatedly deem similar allegations sufficient to state a plausible FLSA claim.[30]

---

[25] *Id.* at 643–45 (quoting *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013), and *Dejesus v. MF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013)).

[26] *Id.*

[27] *Id.* at 645 (citing *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678; *Pruell v. Caritas Christi*, 678 F.3d 10, 10, 14 (1st Cir. 2012) (discussing Fed. R. Civ. P. 8)).

[28] ECF No. 1-2 at ¶¶ 13, 15, 18, 20.

[29] *Id.* at ¶¶ 26, 28.

[30] *See, e.g.*, *Landers*, 771 F.3d at 645; *Boon v. Canon Bus. Sol., Inc.*, 592 Fed. Appx. 631, 631 (9th Cir. 2015) (noting that allegations identifying "tasks for which [plaintiff] was not paid" and allegations "that [plaintiff] regularly worked more than eight hours in a day and forty hours in a week" were sufficient at the pleading stage); *Reader v. HG Staffing, LLC*, No. 3:16-cv-00387, 2017 WL 843170, at *5 (D. Nev. Mar. 2, 2017) (finding that plaintiffs "sufficiently state an FLSA[-]overtime claim" because they provide their weekly schedules; hours worked; an accounting of their general, overtime hours; and an "estimate of how much unpaid overtime per week each individual plaintiff is seeking based on each individual's specific hourly rate").

The City's reliance on non-binding precedent[31] does not persuade me otherwise. In *Coyne v. Station Casinos LLC*[32] and *Levert v. Trump Ruffin Tower I, LLC*,[33] both district court judges declined to find that plaintiffs had plausibly alleged an FLSA violation because they failed to allege specific shift lengths during a given work week, requiring the court to intuit how many hours each plaintiff had worked and calculate whether they were due overtime pay.[34] That is not the case here because the Woodburns have already performed those calculations, all while providing the specific hours they'd worked during each work period and the amount of overtime pay they claim they are owed on a yearly basis. And *Johnson v. Pink Spot Vapors Inc.*[35] only confirms my analysis. There, as here, the plaintiff provided the hours he'd worked and asserted that he'd not been paid for those hours, plausibly alleging a violation of the FLSA.[36] So I deny the City's motion to dismiss the Woodburns' FLSA claim as insufficiently pled.

## II.    The City's motion to strike

The City moves to strike the allegations in the complaint that refer to absent class members who are current City employees, arguing that those employees are subject to a

---

[31] *See* ECF No. 8 at 7–8. "A decision by one judge in this district is not binding on any other district judge . . . and does not constitute the rule of law in this district." L.R. IA 7-3(f).

[32] *Coyne v. Station Casinos LLC*, No. 2:16-cv-02950, 2017 WL 1745031, at *4 (D. Nev. May 2, 2017).

[33] *Levert v. Trump Ruffin Tower I, LLC*, No. 2:14-cv-01009, 2015 WL 133792, at *4 (D. Nev. Jan. 9, 2015).

[34] *See Coyne*, 2017 WL 1745031 at *4 ("Plaintiff's failure to identify specific shift lengths and details of a specific work week requires the court to assume that he always worked five shifts of eight hours per week . . . ."); *Levert*, 2015 WL 133792 at *4 ("This finding, though, requires the Court to assume that Plaintiffs were assigned at least five shifts of eight hours each workweek, which is also something that the Complaint does not allege.").

[35] *Johnson v. Pink Spot Vapors Inc.*, No. 2:14-cv-1960, 2015 WL 433503 at *4 (D. Nev. Feb. 3, 2015).

[36] *Id.*

6

mandatory arbitration agreement that precludes their participation or recovery in this action.[37]  In support of its motion, the City attaches two collective-bargaining agreements allegedly signed by the Henderson Police Officers' Association on behalf of the City's corrections officers, each of which purports to contain a "grievance[-]process" provision mandating arbitration of pay disputes, which seemingly include FLSA-based claims.[38]  The Woodburns argue that this motion is premature and, regardless, that the collective-bargaining agreements do not bar current employees from litigating FLSA claims because "FLSA rights are separate and independent from any rights conferred by a [collective-bargaining agreement]."[39]  Because I agree that the City's motion to strike is premature, I need not address whether I can consider these extraneous documents on a Rule 12(f) motion or whether they preclude certain absent class members from participating in the litigation.

Under Rule 12(f), it is within the district court's discretion to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, and scandalous matter."[40]  "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."[41]  In deciding a motion to strike, courts may not resolve disputed and substantial factual or legal issues.[42]

---

[37] ECF No. 9 at 8–17.

[38] *See id.*, Exs. 1, 2.

[39] ECF No. 15 at 15–16 (purporting to provide quotations from *Small v. Univ. Med. Ctr. of S. Nev.*, 2012 U.S. Dist. LEXIS 162664, at *2 (D. Nev. Nov. 14, 2012)).

[40] *Whittlestone, Inc. v. Hand-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citing Fed. R. Civ. P. 12(f)).

[41] *Id.* (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)) (internal quotation marks omitted).

[42] *Id.*

Nevada district courts frequently characterize a Rule 12(f) motion as "an extreme and drastic remedy" that "is heavily disfavored."[43]

I find that the City's arguments about the scope of the class—including assertions that some absent class members are precluded from recovering in this suit because they are bound by arbitration agreements—are premature. While neither party provides Ninth Circuit authority on this issue, numerous district courts have declined to strike class allegations on the basis that some or all absent class members are bound by arbitration provisions.[44] As one example, the court in *In re Vizio, Inc.*, *Consumer Privacy Litigation* declined to strike the plaintiff's class definition,

---

[43] *See Novva Ausrustung Grp., Inc. v. Kajioka*, No. 2:17-cv-01293, 2017 WL 2990850, at *2 (D. Nev. Jul. 3, 2017) (citing *Armed Forces Bank, N.A. v. FSG-4, LLC*, No. 2:11-cv-654, 2011 WL 5513186, at *4 (D. Nev. Nov. 10, 2011)); *Roadhouse v. Las Vegas Metro. Police Dep't*, 290 F.R.D. 535, 543 (D. Nev. 2013) ("Given their disfavored status, courts often require a showing of prejudice by the moving party before granting the requested relief.") (quotation omitted); *Nev. Fair Hous. Cntr., Inc. v. Clark Cnty.*, 565 F. Supp. 2d 1178, 1187 (D. Nev. 2008) ("A 12(f) motion is a drastic remedy and is generally disfavored by federal courts."); *see also Wein v. Kaiser*, 647 F.2d 200, 201 (D.C. Cir. 1981) ("[M]otions to strike, as a general rule, are disfavored."); *Calaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1334, 1339 (N.D. Cal. 1991) (same).

[44] *See, e.g.*, *Graves v. Sw. & Pac. Specialty Fin., Inc.*, No. C 13-1159, 2013 WL 5945851, at *3–*4 (N.D. Cal. Nov. 4, 2013) (finding defendant's motion to strike class-action allegations regarding arbitrability of absent class-member claims was "premature," given that defendant "has not filed an answer to the complaint, discovery has not yet commenced, and no motion for class certification has been filed"); *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1246 (C.D. Cal. 2011) (finding that a motion to strike class allegations was premature where defendant had not filed an answer and discovery had not begun); *Boddie v. Signature Flight Support Corp.*, No. 19-cv-03044, 2019 WL 3554383, at *3 (N.D. Cal. Aug. 5, 2019) ("While class allegations may be stricken from the pleadings, numerous courts within this district have determined that motions to strike class allegations are disfavored because a motion for class certification is a more appropriate vehicle for arguments about class propriety.") (internal citations and quotation marks omitted); *see also T.K. v. Adobe Sys. Inc.,* No. 17-CV-04595, 2018 WL 1812200, at *13 (N.D. Cal. Apr. 17, 2018) ("[T]he Court finds it more appropriate to address these issues at the class certification stage once both sides have had the opportunity to further develop their arguments and engage in discovery."); *In re Wal-Mart Stores*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) ("In the absence of any discovery or specific arguments related to class certification, the [c]ourt is not prepared to rule on the propriety of the class allegations and explicitly reserves such a ruling.").

despite the defendant's evidence that some absent class members were bound by arbitration provisions, because "a motion for class certification is the proper juncture to determine whether the enforceability of unnamed class members' arbitration agreements undercuts [p]laintiffs' ability to establish any of the requirements of Rule 23."[45] So too in *Graves v. Southwestern & Pacific Specialty Finance, Inc.*, which declined to strike class allegations that "putative class members except the [p]laintiffs" and certain other individuals "have entered into binding arbitration agreements," presumptively excluding them from the class.[46] I agree with their reasoning. While the City's arguments may ultimately prove to be persuasive, I find that its motion to strike is premature and unnecessary given that it requires me to consider materials outside the pleadings, the City has yet to file an answer to the complaint, discovery has not commenced, and no motion for class certification has been filed.[47] So, I deny its Rule 12(f) motion to strike.

**Conclusion**

IT IS THEREFORE ORDERED that the City's motions to dismiss and strike **[ECF Nos. 8, 9] are DENIED.** IT IS FURTHER ORDERED that **the stay of discovery [ECF No. 20] is lifted**, and the parties must file their proposed discovery plan and scheduling order by October 20, 2020.

                                                                                                      _____
                                                U.S. District Judge Jennifer A. Dorsey
                                                                        September 29, 2020

---

[45] *In re Vizio, Inc.*, *Consumer Priv. Litig.*, No. 8:16-ml-02693, 2017 WL 11420284, at *7 (C.D. Cal. Jul. 25, 2017).

[46] *Graves*, 2013 WL 5945851, at *3–*4.

[47] *See id.* (citing *In re Wal-Mart Stores*, 505 F. Supp. at 615–16). Currently, the City's arguments are essentially in opposition to a not-yet-filed class-certification motion.

9