**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Kelly Woodburn, et al.,

    Plaintiffs

v.

City of Henderson,

    Defendant

Case No.: 2:19-cv-01488-JAD-VCF

**Order Granting Plaintiffs' Motion for Collective Action, Denying Defendant's Motion to Compel Arbitration, and Denying Defendant's Motion to Dismiss**

[ECF Nos. 41, 60, 61]

Plaintiffs are current and former corrections officers at the Henderson Detention Center (HDC) who sue the City of Henderson for unpaid overtime under the Fair Labor Standards Act (FLSA). They move to conditionally certify their collective action under 29 U.S.C. § 216(b). The City objects, claiming that current officers cannot be part of the collective action because they are required to arbitrate FLSA claims under their collective bargaining agreement (CBA). It moves to compel arbitration for Joshua Rodriguez, a current officer who recently was joined as a named plaintiff. The City also moves to dismiss plaintiffs' second-amended complaint in its entirety, contending that it alleges "gap-time" claims that are not actionable under the FLSA.

Because I find that the CBA does not contain a clear and unmistakable waiver of the officers' right to litigate statutory claims, I deny the City's motion to compel arbitration. The plaintiffs have sufficiently alleged claims for unpaid overtime under the FLSA, so I deny the City's motion to dismiss. And because they have adequately pled that the members of their collective action are similarly situated, I grant their motion for collective action and equitably toll the applicable statute of limitations from May 29, 2021, until the City provides contact information for potential class members to plaintiffs' counsel.

1

**Background**

2    Plaintiffs Kelly and Thomas Woodburn, both former HDC corrections officers, filed this

3 collective action in state court in July 2019 for violations of the FLSA's overtime provisions.[1]

4 They allege that HDC corrections officers were required to perform indispensable and integral

5 work duties for 30–45 minutes before their scheduled shifts, and 20–45 minutes after their

6 scheduled shifts—in excess of the maximum hours the FLSA dictates for law enforcement

7 officers—but that they were not paid overtime for those hours.[2]

8    The City removed the action to this court and filed a motion to dismiss and to strike

9 plaintiffs' amended complaint.  It argued that plaintiffs' collective allegations concerning current

10 HDC officers should be struck because the parties' CBA mandates arbitration for current

11 employees, and that the complaint should be dismissed in its entirety because the plaintiffs did

12 not sufficiently allege that they were owed overtime pay.[3]  I denied both motions, finding that

13 plaintiffs alleged a cognizable overtime claim and that the City's arbitration arguments were

14 premature.[4]

15    In June 2021, the magistrate judge granted plaintiffs' motion for leave to file a second-

16 amended complaint adding a third plaintiff, Joshua Rodriguez, who is a current HDC officer.[5]

17 Plaintiffs now move for conditional certification of their collective action, to include former and

18 current corrections officers employed by the City at any time from July 3, 2016, to the present.[6]

19

20 [1] ECF No. 1.

21 [2] ECF No. 57 at 4–6.

[3] ECF No. 8; ECF No. 9.

22 [4] ECF No. 21.

23 [5] ECF No. 56.

[6] ECF No. 41.

The City opposes[7] and re-argues that Rodriguez and all future opt-in plaintiffs who are current employees should be compelled to arbitrate their claims.[8]  The City also moves to dismiss the second-amended complaint in its entirety, contending again that plaintiffs failed to sufficiently allege an FLSA claim for unpaid overtime.[9]

## Discussion

## I.    The City's motion to compel arbitration [ECF No. 60]

The City contends that any current employees who want to join this lawsuit must arbitrate their claims because their CBA contains an arbitration clause.[10]  It asks me to (1) deny plaintiff's motion for certification on this basis, since all current employees are subject to arbitration provisions and therefore are not similarly situated to retired or former employees who are not so bound; and (2) compel Rodriguez to arbitrate his FLSA claims.

Under the Federal Arbitration Act (FAA), "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy" arising out of the contract or transaction is "valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract."[11]  The FAA permits any party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to petition any federal district court for an order compelling arbitration in the manner provided for in the arbitration agreement.[12]  "By its terms, the Act 'leaves no place for the

---

[7] ECF No. 52.

[8] ECF No. 60.

[9] ECF No. 61.

[10] ECF No. 60.  The City also raises this argument in response to plaintiffs' preliminary-certification motion.  ECF No. 52.

[11] 9 U.S.C. § 2.

[12] *Id.* at § 4.

exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'"[13]  The district court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does (2) whether the agreement encompasses the dispute at issue."[14]  The party seeking to compel arbitration has the burden to show that both of these questions must be answered in the affirmative.[15]

The Supreme Court and the Ninth Circuit have held that broad, general arbitration provisions in CBAs do not bar employees' rights to pursue statutory claims in court.[16]  While a general arbitration provision may bar litigation concerning the violation of a CBA's contractual provisions, statutory rights are "separate and distinct" from those rights that were bargained for and agreed upon.[17]  Because "the right to a federal judicial forum is of sufficient importance to be protected against less-than-explicit union waiver in a CBA," a CBA can only require arbitration of statutory claims if it contains a "clear and unmistakable" waiver of an individual's right to litigate those claims in court.[18]  Courts "will not infer from a general contractual

---

[13] *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original)).

[14] *Id.*

[15] *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015); *Nguyen v. Barnes and Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).

[16] *See Barrentine v. Arkansas-Best Freight Sys. Inc.*, 450 U.S. 728, 737 (1981); *Alberston's, Inc. v. United Food & Commercial Workers Union, AFL-CIO & CLC*, 157 F.3d 758, 760 (9th Cir. 1998).

[17] *Alberston's, Inc.*, 157 F.3d at 760.

[18] *Wright v. Univ. Maritime Serv. Corp.*, 525 U.S. 70, 80 (1998) (quoting *Metro. Edison Co. v. NLRB*, 460 U.S. 693, 708 (1983)) (applying the "clear and unmistakable" standard to statutory antidiscrimination claims).  "[E]very court to have discussed the issue has recognized *Wright*'s application to other statutory claims." *Wawock v. CSI Elec. Contractors, Inc.*, 649 F. App'x 556, 558 (9th Cir. 2016) (applying *Wright* to state statutory labor claims) (citing *Gilbert v. Donahoe*, 751 F.3d 303, 307–10 (5th Cir. 2014) (FMLA); *Jonites v. Exelon Corp.*, 522 F.3d 721, 725 (7th

provision that the parties intended to waive a statutorily protected right unless the undertaking is 'explicitly stated.'"[19]

Plaintiffs do not dispute that the CBA contains a valid and enforceable arbitration provision. They dispute only whether it applies to their FLSA claims. The CBA's arbitration provision starts out as a grievance procedure that applies to "any dispute concerning the interpretation or application of an expressed provision of this Agreement."[20] If a grievance is not resolved by the CBA's detailed grievance process, it is referred to an arbitrator, whose authority and jurisdiction is "confined exclusively to the interpretation and application of an expressed provision or provisions" of the CBA.[21] "Grievance" is broadly defined as "any dispute which arises regarding an interpretation, application, or alleged violation of any of the provisions of this agreement or policy or procedure."[22]

The City does not deny that the CBA's grievance clause itself does not clearly and unmistakably waive an individual's right to bring statutory claims in court. The City instead contends that its incorporation of references to the FLSA in other provisions of the CBA makes it sufficiently clear that the grievance procedure was intended to apply to FLSA claims.[23] The

---

Cir. 2008) (FLSA); *O'Brien v. Town of Agawam*, 350 F.3d 279, 284–86 (1st Cir. 2003) (FLSA); *Vasserman v. Henry Mayo Newhall Memorial Hosp.*, 65 F. Supp. 3d 932, 964–65 (C.D. Cal. 2014) (California wage and hour claims); *Martinez v. J. Fletcher Creamer & Son, Inc.*, 2010 WL 3359372, at *3 (C.D. Cal. Aug. 13, 2010) (FLSA and California statutory claims). The parties do not dispute that *Wright* applies here.

[19] *Wright*, 525 U.S. at 80 (citations omitted); *see also 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 259 (2009) (reiterating that an agreement to arbitrate statutory antidiscrimination claims must be "explicitly stated" in a CBA).

[20] ECF No. 60-1 at 37 (CBA).

[21] *Id*. at 39.

[22] *Id*. at 37.

[23] ECF No. 60 at 10.

CBA makes explicit mention of the FLSA three times.  In a section concerning compensatory time off that employees can take in lieu of overtime, the CBA states that "compensatory time off will accumulate for the fiscal year, to the maximum allowed by the [FLSA], which is currently four hundred eight (480) hours."[24]  In the same section, the CBA states that "[t]he Department Command Staff will strive to accommodate compensatory time off requests whenever possible and understand its obligation under the [FLSA]."[25]  And another section of the CBA's overtime provisions states that "[t]ravel time to and from work is not compensable per the federal Portal-to-Portal Act."[26]  The City contends that "an overall reading of the CBA combined with [these specific FLSA references] evidence that the parties clearly and unmistakably intended for any disputes concerning overtime, statutory or otherwise, should be resolved through the grievance/arbitration process."[27]

But these fleeting references to the FLSA do not clearly and unmistakably waive any employee's right to sue for violations of its overtime provisions.[28]  The agreement merely

---

[24] ECF No. 60-1 at 26.

[25] *Id.* at 26–27.

[26] *Id.* at 27.  The Portal-to-Portal Act amended the FLSA to clarify that certain activities, like traveling to and from work or engaging in "incidental" activities before or after work, do not count as compensable work time.  29 U.S.C. § 254.

[27] ECF No. 60 at 10.

[28] *See, e.g.*, *Gunther v. No. Coast Coop., Inc.*, 2020 WL 3394547, at *10 (N.D. Cal. June 19, 2020) (finding that "one single reference" to the relevant statute in a CBA did not constitute a clear and unmistakable waiver of right to sue under that statute); *Smith v. Serv. Emps. Int'l Union, Local 521*, 2016 WL 4268713, at *8 (N.D. Cal. Aug. 14, 2016) (arbitration clause that listed federal laws to be arbitrated generally amounted to a "blanket waiver" that were insufficient to clearly and unmistakably waive right to sue); *Padilla v. Alta Dena Certified Dairy, LLC*, 2019 WL 7865173, at *4 (C.D. Cal. Sept. 26, 2019) (CBA stating that meal and rest-period requirements "may vary . . . based on . . . the appropriate Industrial Welfare Commission work order" did not clearly and unmistakably waive right to sue under the applicable work order).  *Cf. Olea v. Teichert Pipelines, Inc.*, 2021 WL 1839683, at *5 (C.D. Cal. May 7, 2021) (finding clear

contemplates that the City will allow compensatory time to accrue "to the maximum allowed by the FLSA," that it will "strive to . . . understand its obligations under the FLSA" when responding to compensatory time-off requests, and that travel time is not compensable under the FLSA.[29]  None of these CBA provisions applies to this lawsuit, as the plaintiffs are not contesting the City's comp-time or travel-time policies.  There is no indication that the FLSA governs any part of the agreement or that the statute was so incorporated that any FLSA dispute could be said to "concern[] the interpretation or application of an expressed provision" of the CBA.  And these references cannot be said to explicitly make "compliance with the [FLSA] a contractual commitment that would be subject to the arbitration clause."[30]

The City relies heavily on the District of Minnesota case of *Montgomery v. Compass Airlines*[31] to contend that the CBA's references to the FLSA suffice to constitute a waiver of an employee's right to bring suit under the statute.  But *Montgomery* is distinguishable and unpersuasive.  The CBA at issue in *Montgomery* contained a general arbitration provision and a promise that the employer would "comply with the provisions of the Family and Medical Leave Act (FMLA)."[32]  The district court held that the broad arbitration provision, coupled with the promise that the employer would comply with the FMLA, constituted a clear and unmistakable waiver of the plaintiff's right to bring FMLA claims in court.[33]  The *Montgomery* court relied on cases from the Fourth and Fifth Circuits to reach this result, noting that those circuits had held

---

and unmistakable waiver of California Labor Code claims in CBA that explicitly listed the Labor Code sections subject to arbitration).

[29] ECF No. 60-1 at 26–27.

[30] *Wright*, 525 U.S. at 81.

[31] *Montgomery v. Compass Airlines*, 98 F. Supp. 3d 1012 (D. Minn. 2015).

[32] *Id.* at 1029.

[33] *Id.*

that an "explicit incorporation of statutory requirements [] elsewhere in the contract" is sufficient to show that a CBA clearly and explicitly waives the right to sue for statutory violations.[34]

Aside from the fact that none of this authority is binding here, the City's CBA differs significantly from the one in *Montgomery*. Compass Airlines' express promise to comply with the FLSA is materially distinguishable from the City's acknowledgement that it would "strive to . . . understand" its FLSA obligations in certain enumerated scenarios.[35] And the only references to the FLSA in this CBA relate to specific pay provisions (compensatory time and travel time), none of which are at issue in plaintiffs' complaint. When the CBA is read as a whole, its fleeting FLSA references in distinct portions of the agreement simply do not indicate that the employees intended to waive their right to pursue all FLSA claims in court.

The City also argues that because the CBA creates an overtime scheme allowed by an FLSA exemption for law enforcement officers,[36] it is clear that, "at a minimum, [the City] is contractually bound to comply with the FLSA."[37] But the City had to connect the dots between the CBA provisions and the FLSA exemption it claims the document implements because the CBA's terms do not expressly state that the overtime provisions it employs are permitted by the

---

[34] *Carson v. Giant Food, Inc.*, 175 F.3d 325, 331–32 (4th Cir. 1999); *see also Ibarra v. United Parcel Serv.*, 695 F.3d 354, 359 (5th Cir. 2012) ("[F]or a waiver of an employee's right to a judicial forum for statutory discrimination claims to be clear and unmistakable, the CBA must, at the very least, identify the specific statutes the agreement purports to incorporate or include an arbitration clause that explicitly refers to statutory claims.").

[35] *See Powell v. Anheuser-Busch Inc.*, 457 F. App'x 679, at *1 (9th Cir. 2011) (CBA that "recognizes" defendants' duty to comply with the FEHA in a particular context does not clearly and unmistakably waive right to bring FEHA claims in court).

[36] The boundaries and applicability of this exemption are discussed in section II.B.1, *supra*.

[37] ECF No. 60 at 9–10.

FLSA.  And whether the FLSA permits the overtime scheme that the CBA envisions is a statutory question, not one involving an interpretation of what the parties agreed to in the CBA.[38]

Lastly, the City argues that, because resolving plaintiffs' FLSA claims will require an interpretation of various CBA provisions, claims by current employees must first be presented to an arbitrator to perform that interpretation.[39]  The City appears to rely on the standard for determining whether a statutory claim is precluded by the Labor Management Relations Act (LMRA), which does not apply to workers in the public sector, like plaintiffs.[40]  The City cites *Hoops v. Keyspan Energy*[41]—a case interpreting the LMRA—to contend that, because resolution of plaintiffs' FLSA claim may involve some interpretation of the CBA's overtime provisions, this case must be arbitrated under the FAA and the CBA's terms.  But *Hoops* concerns a completely different statutory scheme and employs a different standard, so its reasoning and holding are inopposite here.  And while the CBA may have provisions that implement the FLSA exception or are otherwise coextensive with the FLSA, that doesn't transform this case into one

---

[38] *See Collins v. Lobdell*, 188 F.3d 1124, 1127 (9th Cir. 1999) (rejecting similar argument when parties agreed to an alternative overtime scheme permitted by an FLSA exemption, nothing that, "[w]here employers and employees reach an agreement that expressly violates the FLSA or is silent on an issue and the employer takes action, which violates the FLSA, employees may still bring actions to protect rights provided for in the FLSA without exhausting remedies established in the agreement."  "Clearly, in such a case, the complaint is based on the FLSA and not the agreement.").

[39] ECF No. 60 at 11–12.

[40] *See Columbia Export Terminal, LLC v. Int'l Longshore and Warehouse Union*, 2 F.4th 1243, 1249 (9th Cir. 2021) (to determine whether LMRA § 301 preemption applies to state-law claims, courts must consider whether the plaintiff's state-law right is "substantially dependent on an analysis of the CBA"—if it is, disputes over the right must be arbitrated according to the applicable CBA); *see also* 29 U.S.C. § 152(2) ("[t]he term 'employer' includes any person acting as an agent of an employer, directly or indirectly, but shall not include the United States . . . or any State or *political subdivision* thereof"); *Int'l Union of Operating Eng'rs v. Cnty. of Plumas*, 559 F.3d 1041, 1044 (9th Cir. 2009) (holding that a county is not an employer under the LMRA).

[41] *Hoops v. Keyspan Energy*, 822 F. Supp. 2d 301 (E.D.N.Y. 2011).

about the interpretation of CBA provisions.  "The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence."[42]  The FLSA "provides standards of conduct independent from the provisions of any CBA."[43]  Even if the CBA creates "a contractual right that is coextensive with the federal statutory right," "the ultimate question for the arbitrator would be not what the parties agreed to, but what federal law requires; and that is not a question [that] should be presumed to be included within the arbitration agreement."[44]  The question in this case is whether the City violated its overtime requirements under the FLSA, and the answer will come from statutory—not contractual—interpretation.  Because the CBA does not clearly and unmistakably cede that task of statutory interpretation to an arbitrator, I deny the City's motion to compel arbitration.

## II.   The City's motion to dismiss [ECF No. 61]

### A.   Motion-to-dismiss standard

Federal Rule of Civil Procedure 8 requires every complaint to contain "[a] short and plain statement of the claim showing that the pleader is entitled to relief."[45]  While Rule 8 does not require detailed factual allegations, the properly pled claim must contain enough facts to "state a

---

[42] *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 50 (1974).  *See also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 34–35 (1991) (reiterating that statutory rights are independent of rights created under CBAs); *see also Alaska Airlines v. Schurke*, 898 F.3d 904, 919–20 (9th Cir. 2018) ("The fact that a CBA provides a remedy or duty related to a situation that is also directly regulated by non-negotiable state law does not mean the employee is limited to a claim based on the CBA.").

[43] *Gann v. J.C. Penney Corp.*, 2012 WL 2792328, at *1 (D. Nev. July 9, 2012) (citing *Wright*, 525 U.S. at 78–79) (additional citation omitted).

[44] *Wright*, 525 U.S. at 79 (emphasis removed).

[45] Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

claim to relief that is plausible on its face."[46]  This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"; the facts alleged must raise the claim "above the speculative level."[47]  In other words, a complaint must make direct or inferential allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory."[48]

District courts employ a two-step approach when evaluating a complaint's sufficiency on a Rule 12(b)(6) motion to dismiss.  The court must first accept as true all well-pled factual allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption of truth.[49]  Mere recitals of a claim's elements, supported by only conclusory statements, are insufficient.[50]  The court must then consider whether the well-pled factual allegations state a plausible claim for relief.[51]  A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[52]

---

[46] *Twombly*, 550 U.S. at 570.

[47] *Iqbal*, 556 U.S. at 678.

[48] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)) (emphasis in original).

[49] *Iqbal*, 556 U.S. at 678–79.

[50] *Id.*

[51] *Id.* at 679.

[52] *Id.*  The City previously filed a motion to dismiss plaintiffs' amended complaint, raising a different argument concerning the sufficiency of plaintiffs' overtime claims.  ECF No. 8.  It provides no reason why it could not have raised its gap-time argument then as well, as the amended complaint contained substantially the same allegations and the hourly calculations that the now-operative second-amended complaint contains.  FRCP 12(g) provides that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but imitted from its earlier motion."  But because plaintiffs do not dispute the procedural propriety of the City's second bite at the motion-to-dismiss apple, I decline to deny it on that basis, and I consider the City's arguments.

**B.      Plaintiffs plausibly allege a claim for FLSA overtime violations.**

The City moves to dismiss the second-amended complaint in its entirety, arguing that the plaintiffs have alleged only "gap-time" claims that are not cognizable in an FLSA action.[53]  The FLSA permits claims for two types of wage violations: overtime and minimum wage.[54]  Gap time refers to "uncompensated hours worked that fall between the minimum wage and the overtime provisions of the FLSA."[55]  The Ninth Circuit has not yet considered whether gap-time claims are cognizable under the FLSA, but the majority position is that they are not.[56]

The devil is in the details of how overtime is calculated.  The FLSA normally imposes overtime requirements on hours worked beyond 40 hours in one week.[57]  But public agencies employing law enforcement and corrections officers may take advantage of a law-enforcement exception found in 29 U.S.C. § 207(k), which allows public employers to define longer work periods with a higher overtime threshold.[58]  The City has established a 14-day work period

---

[53] ECF No. 61 at 12–16.

[54] *See* 29 U.S.C. § 216(b) (holding employers liable for "unpaid minimum wages, or their unpaid overtime compensation").

[55] *Adair v. City of Kirkland*, 185 F.3d 1055, 1062 (9th Cir. 1999).

[56] *See, e.g.*, *Davis v. Abington Mem. Hosp.*, 765 F.3d 236, 244 (3d Cir. 2014); *Lundy v.Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013); *Monahan v. Cnty. of Chesterfield*, 95 F.3d 1263, 1280 (4th Cir. 1996); *Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d 353, 357 (8th Cir. 1986); *Kouchi v. Amer. Airlines*, 2019 WL 994011, at *3 (C.D. Cal. Jan. 23, 2019) (collecting district court cases in the Ninth Circuit rejecting gap-time claims). *But see Lemon v. City of Shawnee*, 972 F.2d 1145, 1155 (10th Cir. 1992) (allowing gap-time claims).

[57] 29 U.S.C. § 207(a).

[58] 29 U.S.C. § 207(k); *see also* 29 C.F.R. § 553.230(b) (outlining maximum-hour standards for corrections officers depending on length of work period).

which, under § 207(k) and its implementing regulations, means overtime is owed after an employee works 86 hours in that 14-day period.[59]

The City asserts that the CBA "envisions" 14-day work periods to contain shifts equaling 80 hours.[60]  And while the City isn't legally required to pay overtime until an employee passes the 86-hour threshold under § 207(k), the CBA awards overtime after 80 hours.[61]  The City points to the inconsistencies between the plaintiffs' allegations concerning how many hours they worked in an average two-week period and the shifts "envision[ed]" by the CBA.[62]  Because of this inconsistency, the City argues that the plaintiffs cannot plausibly allege that they worked more than 86 hours.[63]  And because the City reads the complaint to allege that plaintiffs worked more than 80—and not 86—hours in a 14–day period, the extra hours worked fall within that range and therefore amount to gap time, not actionable overtime.[64]

Plaintiffs' second-amended complaint refers to (1) hours worked in excess of an 40-hour work week,[65] (2) hours worked in excess of an 80-hour, two-week work period,[66] and (3) hours worked in excess of an 86-hour, two-week work period,[67] making it difficult to ascertain which time period they believe entitles them to overtime compensation under the FLSA.  But regardless, the complaint plausibly alleges that the named plaintiffs worked in excess of 86 hours

---

[59] 29 C.F.R. § 553.230(b).

[60] ECF No. 60 at 14 (citing ECF No. 61-1 at 19–20, 24–26 (Articles 15 and 19 of the CBA)).

[61] *See id.*

[62] *Id.*

[63] *Id.* at 16.

[64] *Id.*

[65] ECF No. 57 at 13.

[66] *Id.*

[67] *Id.* at 7–11.

in a two-week work period.  Plaintiffs allege that every named plaintiff worked seven 12-hour shifts in a two-week period, *not including any additional shifts or duties performed*.  Basic math allows me to conclude those officers had scheduled work for 84 hours per work period (12 x 7 = 84).  They also allege that each plaintiff worked between 50–90 minutes beyond their scheduled work time every shift.[68]  At minimum, then, the complaint alleges that plaintiffs worked more than 89 hours ((.83 x 7) + 84)) or 94.5 ((1.5 x 7) + 84)) hours per two-week work period.  Those numbers are in excess of the 86 hours the FLSA allows under the 207(k) exemption.  The plaintiffs have thus sufficiently alleged that they worked hours that should have been compensated with overtime.[69]

The City's repeated references to the CBA do not change that conclusion.  The CBA "envisions" shift schedules that total 80 hours in a two-week work period.  The City points to this inconsistency between the CBA and plaintiffs' allegations to argue that the allegations are deficient or implausible.[70]  But for purposes of this motion to dismiss, I take as true the plaintiffs' allegations about the hours they worked.  And as plaintiffs point out, "the realities of hours worked, scheduling, overtime, call-outs, call-backs, etc. are nearly never exactly as

---

[68] *Id.* at ⁋ 25.  In plaintiffs' response, they assert that they allege only 45–60 minutes of overtime per shift. ECF No. 67 at 19–20.  The second-amended complaint clearly alleges more.  But even under plaintiffs' reduced estimate, they plausibly assert that with pre-shift and post-shift duties included, they worked between 89 and 91 hours in a two-week period.

[69] The City also takes issue with the consent forms filed by additional plaintiffs in this case.  ECF No. 61 n.9.  The form for each plaintiff attests that they worked "in excess" of 42.75 hours per week—or 85.5 hours per two-week period.  *See, e.g.*, ECF Nos. 30–39, 42, 44–45, 49–51, 54–55.  The City again contends this falls short of the 86-hour threshold permitted by 207(k) and thus doesn't comport with the complaint's allegations.  But when read as a whole and with the complaint, the consent forms indicate that these similarly situated employees have worked between 50 and 90 minutes in excess of every shift worked, which falls comfortably above the 86-hour threshold.

[70] ECF No. 61 at 14.

management (or in this case the CBA) 'envisions.'"[71]  Plaintiffs have pled that they did not work the shift schedules outlined in the CBA, and that is sufficient at this juncture.

### C.    The City's § 203(o) argument is premature.

The City also moves to dismiss any claims based on the allegations that plaintiffs were directed to change in and out of their official uniforms outside of their shift hours.  Section 203(o) of the FLSA specifies that "any time spent in changing clothes . . . at the beginning or end of each workday" is not compensable if that time is excluded "by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee."[72]  The City claims that, because the CBA does not include "donning and doffing of work uniforms for correction officers as compensable work," plaintiffs "cannot demonstrate how this type of alleged uncompensated work does not fall squarely" within the FLSA's exception.[73]

The City's argument is unavailing for three reasons.  First, courts are split as to whether § 203(o) is an affirmative defense that a defendant has the burden to prove, or an element that plaintiffs must show does not apply.[74]  At least one court in this circuit has interpreted Ninth Circuit precedent to conclude that it is an affirmative defense.[75]  The parties do not brief this

---

[71] ECF No. 67 at 17.

[72] 29 U.S.C. § 203(o).

[73] ECF No. 60 at 16.

[74] *See, e.g.*, *Franklin v. Kellogg Co.*, 619 F.3d 604, 611 (6th Cir. 2010) (outlining disagreement among courts as to whether 203(o) is an affirmative defense with the burden of persuasion on the employer, or an exclusion that the employee must prove is inapplicable).

[75] *Valladon v. City of Oakland*, 2009 WL 3401263, at *10 (N.D. Cal. Oct. 20, 2009) (finding that 203(o) is an affirmative defense) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196¬97 (1974) (explaining that "the application of an exemption under the [FLSA] is a matter of affirmative defense on which the employer has the burden of proof") and *Alvarez v. IBP*, 339 F.3d 894, 905 (9th Cir. 2003) (referring to § 203(o) as an "exemption" to FLSA liability)).

1   issue, and I will not assume that the burden is on plaintiffs to show the exemption doesn't apply

2   on this record.

3       Second, § 203(o) states that, to be considered uncompensated work, time spent changing

4   "must be excluded from the workday by the express terms of or the customs and practices under

5   a bona fide CBA."[76]   The City argues that the CBA "does not include donning and doffing of

6   work uniforms for corrections officers as compensable work."[77]   But the statute requires that a

7   CBA expressly *exclude* changing clothes from otherwise compensable work, and the City merely

8   argues that changing clothes isn't expressly *included* as compensable work.   To the extent that

9   the City is suggesting that changing clothes is not compensable "by custom or practice," that

10  argument is premature and best raised after the parties have the opportunity to develop the

11  record.

12      Third, plaintiffs allege that changing uniforms is one of the many "indispensable" duties

13  they had to perform before and after shifts.[78]   If the exemption applies, discovery would be

14  required to determine how much time would need to be removed from plaintiffs' alleged

15  overtime owed.   So again, this challenge is premature, and even if the § 203(o) exemption

16  applies, that would not justify dismissing this action.

17  **III.   Plaintiffs' motion for a collective action [ECF No. 41]**

18      Employees may bring FLSA actions individually or as part of a collective action under 29

19  U.S.C. § 216(b) on behalf of themselves and other similarly situated employees.[79]   Conditional

20

---

21  [76] *Sepulveda v. Allen Family Foods, Inc.*, 591 F.3d 209, 214 (4th Cir. 2009); 29 U.S.C. § 203(o).

22  [77] ECF No. 61 at 16.

    [78] *See* ECF No. 57 at 4–5.

23  [79] *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004) (citing 29 U.S.C.
    § 216(b) and *Does v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000)).

certification[80] of an FLSA collective does not play the same role as class certification under Rule 23: it does not "produce a class with an independent legal status[] or join additional parties to the action."[81] "'The sole consequence' of a successful motion for [conditional] certification is 'the sending of court-approved written notice' to workers who may wish to join the litigation as individuals."[82] "Preliminary certification is '*neither necessary nor sufficient* for the existence of a [collective] action.'"[83]

Courts may conditionally certify a collective action if the workers are "similarly situated."[84] The FLSA does not define the term "similarly situated," but the Ninth Circuit held in *Campbell v. City of Los Angeles*[85] that "[p]arty plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims."[86] "What matters is not just any similarity between party plaintiffs, but a legal or factual similarity material to the resolution of the party plaintiff's claims, in the sense of

---

[80] For purposes of this order, I use the terms "class" and "certification" in a colloquial sense, as the point at this stage is to approve the sending of a notice of a collective action to similarly situated employees, and no "class" is being certified under Rule 23. *See generally Campbell v. City of Los Angeles*, 903 F.3d 1090, 1101–02 (9th Cir. 2018) (clearing up common misconceptions between class-certification motions under FRCP 23 and preliminary- or conditional-certification motions in collective actions under 29 U.S.C. § 216(b)); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008) (noting that "certification" of a collective action is a device to facilitate notice to potential class members and does not actually "create a class of plaintiffs" for a FLSA collective action).

[81] *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013).

[82] *Campbell*, 903 F.3d at 1101 (quoting *Genesis*, 569 U.S. at 75).

[83] *Id.* (quoting *Mters v. Hertz Corp.*, 624 F.3d 537, 555 n. 10 (2d Cir. 2010)) (emphasis and alteration in original).

[84] 29 U.S.C. § 216(b).

[85] *Campbell*, 903 F.3d 1090.

[86] *Id.* at 1117.

having the potential to advance these claims, collectively, to some resolution."[87]  "The level of

consideration is 'lenient,'—sometimes articulated as requiring 'substantial allegations,'

sometimes as turning on a 'reasonable basis,' but in any event loosely akin to a plausibility

standard, commensurate with the stage of the proceedings."[88]  "The district court's analysis is

typically focused on a review of the pleadings but may sometimes be supplemented by

declarations or limited other evidence."[89]

Plaintiffs seek to define the collective as: "All persons currently employed or formerly

employed as Corrections Officers by [the] City [] at any time from July 3, 2016, to present."[90]

The City first contends that, because current employees are subject to mandatory arbitration of

their claims under the CBA, they are not similarly situated to former employees who are not

subject to the CBA.[91]  I have rejected the City's arbitration argument and therefore find that

current employees can be included in the same collective action because no plaintiffs are

required to arbitrate their FLSA claims.

The City next argues that conditional certification is unavailable because there is "no

evidence of a common plan or policy implemented by [the City] regarding any of the alleged

uncompensated work performed."[92]  The City makes no mention of the standards articulated in

*Campbell* and relies instead on district court cases from other circuits to insist that plaintiffs must

---

[87] *Id*. at 1115.

[88] *Id*. at 1109.

[89] *Id*.

[90] ECF No. 41 at 3.

[91] ECF No. 52 at 9–11.

[92] *Id*. at 12–16.

have evidence of a policy to succeed at the conditional-certification stage.[93]  But at this early

juncture in the proceedings, plaintiffs must merely provide substantial *allegations* to show that

the proposed collective has legal or factual similarities that are material to the FLSA claims at

issue.

Plaintiffs have met this burden.  They allege that they, and corrections officers similarly

situated, were required to "arrive at [HDC] 30–45 minutes before the start of their shift to

perform integral and indispensable job duties" like "chang[ing] into their mandatory work

uniforms," "check[ing] the posted assignment sheet to determine which work station they are to

report to," "check[ing] in with their supervisor for a pre-shift head count," "meet[ing] with the

outgoing officer" to de-brief, and, depending on their assigned duty station, "check[ing] their

firearm into the on-site gun locker prior to reporting for duty," "pick[ing] up keys to access

certain areas of the detention center," and "pick[ing] up vehicles to utilize during their shifts."[94]

And they allege that corrections officers "were required to stay at [HDC] for 20–45 minutes

following the end of their shift to perform integral and indispensable job duties" like "de-

brief[ing] incoming Corrections Officers," "chang[ing] out of their mandatory uniforms," and

depending on their shift assignment, "pick[ing] up their firearm from the on-site gun locker,"

"drop[ping] off keys," and "drop[ping] off vehicles."[95]  The plaintiffs allege that they were not

compensated for the time they spent performing these duties.  And the 17 plaintiffs who filed

notices of consent to join this action all state that they were "subject to [the] City[]'s policy of

---

[93] *Id.* at 8–9 (citing *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1165 (D. Minn. 2007) for the proposition that plaintiffs "must come forward with at least some evidence indivating that this is an appropriate case for collective action status") (internal citations omitted).

[94] ECF No. 57 at ⁋⁋ 15–18.

[95] *Id*. at ⁋⁋ at 20–23.

1    requiring Corrections Officers to complete tasks integral and indispensable to their job off-the-

2    clock" and were not paid for the overtime hours they worked.[96]

3          With these detailed allegations about the off-shift duties that similarly situated

4    corrections officers were required to perform, plaintiffs have met their burden to show that they

5    are entitled to conditional certification of their collective action.[97]  Because the plaintiffs

6    substantially allege that they and similarly situated workers were all subject to the City's

7    requirements that they perform indispensable duties before and after their paid shifts, I grant

8    their motion for conditional certification and order the City to disclose the identities and last-

9    known contact information for all potential plaintiffs that fall into the class.

10         I have also reviewed plantiffs' proposed notice-of-pendency and consent forms.  The City

11   doesn't object to the content of either document, and I find them sufficient to notify potential

12   plaintiffs of this action and obtain consent.  I also find that a 90-day opt-in period, to begin when

13   notification is mailed to the potential plaintiffs, is reasonable and should not delay the progress

14   of this case.

15   **IV.    The statute of limitations for opt-in plaintiffs is equitably tolled.**

16         Plaintiffs request that the court deem the statute of limitations tolled for potential class

17   members during the time their motion for conditional certification was pending and through the

---

[96] *See* ECF Nos. 30–39, 42, 44–45, 49–51, 54–55.

[97] *See generally Agerkop v. Sisyphian LLC*, 2021 WL 4348733, at *3 (C.D. Cal. Aug. 4, 2021) (general allegations that workers all were subject to employer actions that misclassified them as independent contractors, failed to pay overtime, required illegal tip-sharing, etc., were sufficient to meet the conditional-certification standard); *Droesch v. Wells Fargo Bank, N.A.*, 2021 WL 1817058, at *3–4 (N.D. Cal. May 6, 2021) (allegations that similarly situated employees had to boot up computers, initialize software programs, read company emails, etc. during off-shift time were sufficient to warrant conditional certification); *Dudley v. TrueCoverage LLC*, 2018 WL 6431869, at *3–4 (C.D. Cal. Sept. 28, 2018) (allegations that similarly situated employees weren't paid for time wrapping up calls, preparing paper work, or responding to emails were sufficient to warrant conditional certification).

notice period.  The Ninth Circuit in *Partlow v. Jewish Orphans' Home of Southern California* held that the FLSA statute of limitations can be equitably tolled.[98]  And "this district generally holds that 'the time for a court to rule on a motion . . . for certification of a collective action in an FLSA case [] may be deemed an 'extraordinary circumstance' justifying application of the equitable tolling doctrine."[99]

The City contends that I should not allow tolling because this case has been pending for two years and tolling from case inception to now would unfairly benefit the plaintiffs.[100]  But plaintiffs don't ask that I toll this case from its initial filing.  Rather, they ask that I toll the statutory period "while this motion is pending and during the notice period."[101]  The City provides no argument as to why I shouldn't grant this request.

Plaintiffs' motion to conditionally certify this class has been pending for approximately eight months—sufficient time for potential opt-in plaintiffs to be unfairly prejudiced by the court-imposed delay.  And because only the City possesses information on the identity of the correctional officers who fall within the scope of the collective-action group—and have to this point refused to provide contact information for current correctional officers—plaintiffs could not have reached those workers sooner to inform them of this action.  I therefore grant plaintiffs' request and toll the statute of limitations starting 30 days after plaintiffs' motion was filed, which was May 29, 2021.  And "to counter the advantage defendant would otherwise gain in

---

[98] *Partlow v. Jewish Orphans' Home, Inc.*, 645 F.2d 757, 760–61 (9th Cir. 1981), *abrogated on other grounds by Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989).

[99] *Desio v. Russell Rd. Food & Bev., LLC*, 2017 U.S. Dist. LEXIS 162609, at *19–20 (D. Nev. Sept. 29, 2017) (quoting *Small v. Univ. Med. Ctr. of S. Nev.*, 2013 WL 3043454, at *3 (D. Nev. June 14, 2013); *see also Dualan v. Jacob Transp. Servs. LLC*, 172 F. Supp. 3d 1138, 1154 (D. Nev. 2016).

[100] ECF No. 52 at 19.

[101] ECF No. 41 at 19.

1   withholding potential plaintiffs' contact information until the last moment," the tolling period

2   ends when the City provides the requisite contact information to plaintiffs' counsel.[102]  If a

3   plaintiff opts in before the date of the City's compliance, the tolling period for that plaintiff runs

4   from May 29, 2021, until the date of that plaintiff's filing of written consent to opt-in with the

5   court.  Tolling does not apply to the plaintiffs who opted in before May 29, 2021.

6                                                        **Conclusion**

7            IT IS THEREFORE ORDERED that the City of Henderson's Motion to Dismiss and

8   Motion to Compel Arbitration **[ECF Nos. 60  61] are DENIED.**

9            IT IS FURTHER ORDERED that Plaintiffs' Motion for Collective Action **[ECF No. 41]**

10  **is GRANTED:**

11  - The City must provide plaintiffs' counsel with the names and last-known addresses of all

12    employees and former employees covered by the collective action in Microsoft Excel or

13    compatible electronic format **within 30 days** of this order;

14  - Plaintiffs must serve the notice and consent-to-sue forms by first-class mail and in the

15    format filed at ECF No.41-2 and ECF No. 41-3;

16  - The City must post a copy of the notice in a conspicuous place where corrections officers

17    congregate at the Henderson Detention Center;

18  - The potential plaintiffs will have 90 days from the date of mailing of the notice and

19    consent-to-sue forms to submit their opt-in forms;

20  - The statute of limitations for plaintiffs' FLSA claims is **TOLLED from May 29, 2021,**

21    **until the City provides the requisite contact information to plaintiffs' counsel.**  If a

22    plaintiff opts in before the date of the City's compliance, the tolling period for that

23

---

[102] *Small*, 2013 WL 3043454, at *3 (cleaned up).

plaintiff runs from May 29, 2021, until the date of that plaintiff's filing of written consent

to opt-in with the court.  Tolling does not apply to the plaintiffs who opted in before May

29, 2021.

_____
U.S. District Judge Jennifer A. Dorsey
November 29, 2021